**Rawshall Luther WHITE, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–84–245.**

Court of Criminal Appeals of Oklahoma.

Oct. 14, 1986.

Mark Barrett, Sp. Counsel, Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Jean M. LeBlanc, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

On appeal from his conviction in the District Court of Creek County, Case No. CRF–83–83, on the charge of First Degree Murder, for which he received life imprisonment, the appellant, Rawshall Luther White, raises four assignments of error.

The night of March 11, 1983, the appellant approached Ronald Abraham in the parking lot of a pool hall in Sapulpa and stated, "Ronnie, I've got to be good to you because I'm on probation, you know." Mr. Abraham did not reply, and walked to his mother's house, which was nearby. Later Abraham and his cousin, Willis Bruner, Jr., went to the Big Cabin Cafe, and while they stood talking, the appellant approached. Abraham went into the cafe while Bruner and the appellant stood and talked. During the conversation he told Bruner that he really did not care about living. Subsequently, Abraham came out of the cafe, approached the appellant and asked, "Rawshall, can we sit down and talk about this?" To which the appellant replied, "Yeah, Ronnie, we can talk about it." At that point appellant pulled a forty-four caliber magnum revolver from his jacket and shot the victim once in the abdomen. He then chased Abraham around the building firing four more times at him, but without striking him again. Abraham ran to his mother's house where he collapsed. After being transported to the hospital, he died the next day.

The appellant testified that on that evening, Abraham had displayed both a knife and a gun to him, and threatened to kill him. During the shooting incident, he claimed that as the victim approached him, he noticed Abraham had his hand in his pocket which was protruding out, and that when Abraham bent his arm, the appellant shot him in self-defense. He then claimed that some of Abraham's friends shot at the appellant who returned fire. He stated he never shot more than one time at the victim.

■ As his first assignment of error, the appellant contends that the trial court committed fundamental error in permitting only five peremptory jury challenges. Title 22 O.S.1981, § 655 provides for nine per-

emptory challenges in prosecutions for first degree murder. The appellant made no objection to the trial court's error, did not request additional peremptory challenges, nor has he shown how he was prejudiced by the court's ruling. As the burden is upon him to establish the fact that he was prejudiced in his substantial rights by the commission of error, this complaint is not sufficient to cause the reversal of this conviction. *Landrum v. State*, 486 P.2d 757 (Okl.Cr.1971).

■ Appellant next alleges nine instances of prosecutorial misconduct, only four of which were properly preserved for review by timely objections. *See Tucker v. State*, 620 P.2d 1314 (Okl.Cr.1980). Two instances involve comments upon the appellant's failure to call any witnesses who observed the shooting. The first time the prosecutor referred to appellant's failure to call a specific witness, the objection by defense counsel was sustained, but no request that the jury be admonished was made. Failure to request an admonition waives an error which could have been cured by the withdrawal of the remark. *Rushing v. State*, 676 P.2d 842 (Okl.Cr.1984). During the second instance, the prosecutor referred to defense counsel's closing argument that during the shooting the appellant was surrounded by friends of the victim. The prosecutor went on to state:

> I submit Mr. White had friends there, and yet, Mr. White has been unable to bring you any Witness. He has the same subpoena power that the State does to subpoena any Witnesses that he wants to here. He has not brought you one Witness—
>
> MR. MILLER: Your Honor, we object to that as being improper and move the Court to admonish the jury to disregard the statement.
>
> THE COURT: Well, the jury is the best judge of whether or not the Defendant has brought Witnesses. Overruled.
>
> MR. MILLER: Exception.
>
> THE COURT: You have two minutes to close.

> MR. COWAN: Thank you, Your Honor. If I can finish my sentence.—he has not brought you any Witness who claimed to have seen the events that occurred there that night, and has not brought you any Witness that corroborates his story that he did not fire five times at Ronnie Abraham....

The appellant cites cases, including *Thompson v. State*, 462 P.2d 299 (Okl.Cr. 1969), for the proposition that criticizing a defendant's failure to call witnesses is reversible error. Such a broad statement is incorrect.

> Subject to the rule ... that a comment by the prosecution on the failure of accused to produce witnesses or evidence is improper if it constitutes a reference to accused's failure to testify, it is generally held that it is not error for the prosecuting attorney to comment on the failure of accused to produce or use certain witnesses, who are accessible to him or in his control, and who are cognizant of material and relevant facts, and competent to testify thereto, and whose testimony would presumably aid accused or substantiate his story if the story were true, as where, for example, the witnesses referred to are relatives of accused, or are otherwise peculiarly under accused's influence or related in interest to him.

23A C.J.S. *Criminal Law* § 1099 (1961). We have reversed or modified cases due to comment on the failure of the defendant to call witnesses where the comment was misleading, or otherwise improper. A careful reading of *Thompson* and *Baldwin v. State*, 519 P.2d 922 (Okl.Cr.1974) reveals that those cases were modified because the prosecutor in each case drew questionable conclusions from matters outside the record. This Court affirmed *Porter v. State*, 76 Okl.Cr. 16, 133 P.2d 903 (1943), where the prosecutor argued that the defendant could not find one witness to testify for him, and that every witness who testified related facts contrary to his story. As that argument was a deduction from the evidence which appeared to be justified, the argument was proper.

During the testimony, the appellant gave the names of several people who were present during the shooting, and although he claimed they were all friends of the victim, at least one of those witnesses testified that he was also a friend of the appellant. Although several witnesses testified, none corroborated the story of the appellant that he only shot one time at the victim, and that was in self-defense. We find that the argument of the prosecutor was within that permitted for closing argument. *See Capps v. State*, 674 P.2d 554 (Okl.Cr.1984).

The appellant next complains of the display of an unadmitted photo. It shows the victim holding a small child. The photo is about two inches wide by three inches long. The trial court sustained defense counsel's objection to its admission into evidence, but denied the motion for a mistrial. Given the size of the photo, and the fact that the jurors were never allowed to examine it, we do not find that the appellant was prejudiced.

In the fourth instance cited by the appellant, the prosecutor, during voir dire, in the context of questioning a prospective juror who stated that her past experiences would interfere with her ability to be fair in this case, asked these questions:

MR. COWAN: Do you feel that there is some added burden either for the Defendant or for the State in this case to convince you, if you're not neutral starting off?

THE PROSPECTIVE JUROR: (Mrs. Roberts) Yes, I would be neutral.

MR. COWAN: But that there would be some stronger burden on one side or the other to convince you? (Tr. 114).

After the defense counsel objected to such questions at a bench conference outside the hearing of the jurors, the trial court admonished the prosecutor to stay away from that particular line of questioning. As the correct burden of proof, as well as the presumption of innocence, were the subjects of other voir dire questions, and covered in the instructions to the jury, we do not find that the questions affected the verdict of the jury as the evidence of guilt was overwhelming. *See Tharps v. State*, 555 P.2d 1054 (Okl.Cr.1976).

We therefore find this second assignment of error to be without merit.

In his third assignment of error, the appellant argues that the prosecution confused and misled the jury through the presentation of rebuttal evidence on collateral issues. As we have previously stated, rebuttal evidence may be offered to explain, repel, counteract, disprove, or destroy facts given in evidence by an adverse party, as well as to clarify a disputed point, even though that same testimony might have been introduced in chief. The introduction of such evidence is a matter of discretion for the trial court, and will not be a ground for reversal absent an abuse of that discretion. *Schneider v. State*, 538 P.2d 1088 (Okl.Cr.1975). The record reveals that the trial court carefully monitored the rebuttal testimony, and even stopped the prosecution at one point to inquire what he was attempting to rebut during the testimony of one witness. We do not find an abuse of discretion, and therefore this assignment of error is also without merit.

Finally, the appellant claims that the trial court should have instructed on misdemeanor-manslaughter. The appellant argues that his case supports all of the underlying misdemeanors which existed in the case of *Dawson v. State*, 647 P.2d 447 (Okl.Cr.1982). In that case, the jury was instructed upon the crimes of second degree murder and second degree manslaughter. The majority held that an instruction on misdemeanor-manslaughter should have been given also, as the Court found that there was evidence supporting guilt of accidental homicide during the commission of a misdemeanor, which constitutes manslaughter in the first degree. We must first note that the trial court in the case at bar gave an instruction on manslaughter in the first degree, 21 O.S. 1981, § 711. The court instructed upon § 711(2), manslaughter in the first degree by heat of passion. The appellant claims

that the facts also support § 711(1), manslaughter in the first degree by misdemeanor-manslaughter. Subsection one is not a lesser included offense of subsection two of 21 O.S.1981, § 711, and therefore no fundamental issue is raised. Because there is no record that the appellant objected to the instructions and offered his own in writing, he has failed to properly preserve this issue for consideration on appeal. *Phipps v. State,* 572 P.2d 588 (Okl.Cr.1977). Furthermore, there was no dispute that the shooting was intentional, the only issues raised were whether the shooting was premeditated murder, heat of passion manslaughter, or justifiable homicide. This assignment of error is also meritless.

The judgment and sentence is AFFIRMED.

BRETT, J., concurs.

PARKS, P.J., dissents.

PARKS, Presiding Judge, dissenting:

I respectfully dissent to the majority's opinion. Title 22 O.S.1981, § 655 provides that in all first degree murder prosecutions, a defendant is entitled to nine (9) peremptory challenges. In this case, the appellant was afforded just five (5) peremptory challenges, and he exercised all five. While it is ture the defense did not object to this irregular and unlawful procedure, Title 22 O.S.1981, § 651 places an affirmative duty on the trial court to properly inform an accused regarding the jury selection process, in order that proper objections may be lodged. The defendant was not advised in this case. It is not proper to say a knowing and intelligent waiver has occured when the trial court failed to give the statutory admonition. The right to trial before an impartial jury is the hallmark of our American system of justice, and is guaranteed by both the Federal and Oklahoma constitutions. *See U.S. Const.* amend VI, and *Okl. Const.* art. II, §§ 19, 20. In order to implement this constitutional right, the Legislature enacted Section 655, regulating the number of peremptory challenges necessary to insure a fair trial by an impartial jury. Failure to afford an accused to the correct number of peremptory challenges should result in reversal, if the accused exercised all those challenges he was allowed by the trial court and did not affirmatively waive those challenges allowed by law. I dissent.